**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.  2:24-cv-129 |
| v. | ) ) | |
| HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant Honeywell International, Inc. f/k/a Allied

Chemical Corporation and as AlliedSignal, Inc. ("Honeywell") hereby removes this action (Civil

Action File No. CE22-01086) from the Superior Court of Glynn County, State of Georgia, to the

United States District Court for the Southern District of Georgia pursuant to 28 U.S.C. §§ 1331,

1441, 1442(a), and 1446.  To the extent any part of the City of Brunswick's causes of action can

be construed as non-federal, this Court has supplemental jurisdiction over them under 28 U.S.C.

§ 1367(a) because they form part of the same case or controversy as those causes of action over

which the Court has original jurisdiction.  Defendant the Georgia Power Company has consented to this Notice of Removal.  That consent is attached hereto as **Exhibit D**.[1]

## BACKGROUND

### A.   Procedural History and Timeliness of Removal

1.      Plaintiff the City of Brunswick, by and through its Mayor and Board of Commissioners, filed this action in the Superior Court of Glynn County, Georgia as Civil Case File No. CE22-01086, on October 20, 2022 (the "State Court Action").

2.      Honeywell was served with a copy of the Complaint (the "Original Complaint") in the State Court Action on October 21, 2022.  Georgia Power was served with a copy of the Original Complaint in the State Court Action on October 28, 2022.

3.      On November 18, 2022, Defendants Honeywell and Georgia Power timely and jointly filed a notice of removal in this Court, asserting arguments under the federal officer removal statute, 28 U.S.C. § 1442; the Court's original jurisdiction under 28 U.S.C. § 1331; and diversity jurisdiction under 28 U.S.C. § 1332(a).

4.      On September 1, 2023, this Court entered an order granting the City's Motion to Remand.  *See* Order, ECF No. 43, *City of Brunswick v. Honeywell, et al.*, No. 22-cv-132 (Sept. 1, 2023).  Defendants timely appealed to the United States Court of Appeals for the Eleventh Circuit under 28 U.S.C. §§ 1291 and 1447(d).  That appeal has been fully briefed and oral argument is scheduled before a panel of the Eleventh Circuit on December 16, 2024.

5.      After proceedings recommenced in the state court, Honeywell moved to dismiss the Original Complaint on June 3, 2024.

---

[1] By filing or consenting to this Notice of Removal, Defendants do not waive any right, defense, affirmative defense, or objection, including without limitation any challenges to personal jurisdiction, insufficient process, and/or insufficient service of process.

6.       The City filed its First Amended Complaint on September 18, 2024.

7.       The City filed its Second Amended Complaint on October 15, 2024.  The complaint is dated October 14, but was accepted by the state court on October 15 and was not served on Honeywell until October 15.

8.       Under 28 U.S.C. § 1446(b)(3), if "the case stated by the initial pleading [was] not removable, a notice of removal may be filed within [thirty] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

9.       This Notice of Removal is timely filed within 30 days after Honeywell received the Second Amended Complaint.  Although Honeywell maintains its position that the Original Complaint was removable, this Court held otherwise.  But as described further below in the "Grounds for Removal" section, changes in the Second Amended Complaint make absolutely clear that the City seeks to challenge and recover damages based on the alleged insufficiency of Honeywell's ongoing cleanup of a federal Superfund site under the direction and oversight of the U.S. Environmental Protection Agency ("EPA") pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and a federal consent decree.  As described further below, this Court's previous reasoning in granting remand—that the complaint challenged pollution that had happened in the past, before EPA became involved in overseeing the site—does not apply to the Second Amended Complaint, and the Second Amended Complaint is accordingly removable under the federal officer removal statute, 28 U.S.C. § 1442, and the federal question jurisdiction statute, 28 U.S.C. § 1331.

10.      In light of this Court's previous ruling that "the case stated by the initial pleading [was] not removable," this Notice of Removal has been filed "within [thirty] days after receipt by

the defendant, through service or otherwise, of a copy of an amended pleading, . . . from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Consistent with 28 U.S.C. § 1446(b)(3), this Notice of Removal is timely because it is filed within 30 days after the receipt by Honeywell, through service or otherwise, of the Second Amended Complaint.

11.     Although Honeywell maintains that the original complaint was removable, Honeywell is filing this notice of removal protectively to ensure that, if the Eleventh Circuit affirms this Court's remand order, Honeywell will have an opportunity to argue that changes in the Second Amended Complaint have rendered the case removable.

**B.     Nature of the Action and Honeywell's Ongoing Remediation Efforts Under EPA's Direction**

12.     The City alleges that Honeywell's operation of a chlor-alkali plant in Brunswick, Georgia (the "Plant Site") from 1956 to 1979, as well as its role in keeping the Plant Site operational from 1979 to 1994 after Honeywell sold it to Linden Chemicals and Plastics Corporation ("LCP"), resulted in discharges of mercury and poly-chlorinated biphenals ("PCBs") into the air and water that spread into waters, marshes, and property of the City of Brunswick.  *See* Second Am. Compl. ("SAC") ¶¶ 7, 9, 11–13, 19–23, 35–36, 42–44, 61–62, 64, 71.  According to the City, the alleged pollution from the Plant Site "continues to migrate both to and from City property."  SAC ¶ 78.  The City thus alleges that its properties "have been poisoned and contaminated" and that Defendants' actions "have interfered with the value, use and enjoyment of property of the City of Brunswick."  SAC ¶ 100.  The City also alleges harm to natural resources and wildlife around the Plant Site.  *See* SAC ¶¶ 83–86.  The City asserts claims for continuing trespass (Count One) and continuing nuisance (Count Two).

13.     As the Complaint acknowledges, however, the Plant Site was designated a federal "Superfund" site in the mid-1990s, and since that time Defendants have been in the process of remediating mercury and PCB contamination from the Plant Site under the authority and oversight of EPA pursuant to CERCLA.

14.     In 2016, Defendants entered into a Consent Decree with EPA to implement EPA-ordered remedial actions subject to the agency's oversight and control.  *See* Consent Decree for Remedial Design and Remedial Action at Operable Unit One of the LCP Chemicals Superfund Site between Honeywell, Georgia Power, and EPA, attached hereto as **Exhibit A**.  On July 27, 2017, the Honorable J. Randal Hall issued an order approving and adopting that Consent Decree. Order, ECF No. 26, *United States v. Honeywell Int'l Inc. & Georgia Power Co.*, No. 16-cv-112 (S.D. Ga. July 27, 2017); *see also* Complaint, ECF No. 1, *United States v. Honeywell Int'l Inc. & Georgia Power Co.*, No. 16-cv-112 (S.D. Ga. July 29, 2016), attached hereto as **Exhibit B**.

15.     In fact, since 1994, EPA has been comprehensively directing and overseeing the investigation and remediation of environmental contamination at and around the Plant Site pursuant to its authority under CERCLA.

16.     Around that time, EPA issued a "Unilateral Administrative Order" to Honeywell and others "ordering them to remove the chemicals remaining at the Plant, to determine the extent of contamination at the Plant, and to begin the environmental remediation of the Plant and the Plant Site."  SAC ¶ 65.   On July 6, 1995, Defendants commenced a Remedial Investigation and Feasibility Study for the area in and around the Plant Site pursuant to an Administrative Order by Consent with EPA.  *See* Administrative Order by Consent, attached hereto as **Exhibit C**; *see also* **Ex. A** at 1 ¶ G.

5

17.     In 1996, EPA formally designated the area in and around the Plant Site as a federal Superfund site by placing it on the CERCLA National Priorities List.  *See National Priorities List for Uncontrolled Hazardous Waste Sites*, 61 Fed. Reg. 30,510, 30,512 (June 17, 1996).

18.     Defendants completed the Remedial Investigation for the Site in November 2012 and the Feasibility Study in August 2015.  *See* **Ex. A** at 1 ¶ H.  In the meantime, Defendants have been engaged in extensive ongoing remediation.  For example, Plaintiffs allege that, "[i]n 1998, [EPA] required Defendant Honeywell to remove one foot of soil from thirteen acres of the marsh and sediment in creeks in front of the old Honeywell trash dump."  SAC ¶ 68.

19.     Following extensive investigation activities and additional remedial work at EPA's direction, EPA issued a Record of Decision in 2015 that selected remedial action to be implemented at the marsh portion of the Site.  *See* **Ex. A** at 2 ¶ J.  This Record of Decision directed extensive remedial action relating to mercury and PCBs, including, among other components of the chosen remedy: dredging approximately seven acres in the march creeks and backfilling those areas with twelve inches of clean material; stabilizing dredged areas through replanting with native plants; isolating contaminated sediment by capping approximately six acres in the marsh; and implementing "thin-layer placement" to further reduce contaminant exposure on approximately eleven acres of the same marsh.  *See* Remedial Design/Remedial Action Statement of Work at 1, attached hereto as **Exhibit E**.

20.     In July 2016, Defendants entered into the Consent Decree with EPA, agreeing to take extensive remedial actions at the Site.  See Ex. A.  This Court approved the Consent Decree on July 27, 2017, and Defendants are now implementing the remedial action set forth in the Record of Decision pursuant to the Consent Decree.  The obligations of the Consent Decree are ongoing and require Defendants to undertake remediation efforts under the authority and oversight of EPA.

21.     Crucially, Defendants are barred by federal law from undertaking *any* other remedial action at the Plant Site.  CERCLA is clear: Once EPA "has initiated a remedial investigation and feasibility study for a particular facility [including a Superfund site], *no potentially responsible party [such as Honeywell] may undertake any remedial action at the facility unless such remedial action has been authorized by [EPA]*."  42 U.S.C. § 9622(e)(6). As the U.S. Supreme Court has previously made clear, that provision of CERCLA is a "crucial tool[] for ensuring an orderly cleanup of toxic waste" because it "ensure[s] the careful development of a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 19, 22 (2020).  Honeywell is thus prohibited from undertaking any remedial actions at the Plant Site other than those set forth in the Record of Decision pursuant to the Consent Decree.

### C.     The Second Amended Complaint

22.     The Second Amended Complaint includes new allegations reflecting that the City's claims for continuing nuisance and trespass stem from the allegation that Defendants *continue* to maintain the pollution at the Plant Site, specifically, through Defendants' alleged failure to abate pollution at the Plant Site and to prevent the alleged "continue[d] … migrat[ion]" of pollution from the Plant Site to "City property."  SAC ¶ 78.  The Second Amended Complaint makes clear that the alleged "continuing nuisance" and "continuing trespass" is not alleged pollution that happened many years ago on Honeywell's property, but an alleged ongoing failure to remediate pollution at Honeywell's property and thus to prevent such pollution from spreading to the City's property. *See* SAC ¶ 78; *see also, e.g.*, SAC ¶ 11 (new allegation asserting that mercury allegedly dumped decades ago has spread "after the passage of time onto property of the City of Brunswick").

23.     The City has amended the allegations within its trespass count to clarify that the alleged "continuing trespass" consists of the "spread of Defendants' pollution . . . to and from the

property of the City of Brunswick," *i.e.*, the continuing spread of pollution from the Plant Site. SAC ¶ 108.  Likewise, instead of alleging (as the City originally did) that Defendants committed a trespass by their "failure and refusal to permanently remove their pollution from property of the City of Brunswick," Original Compl. ¶ 111, the City has now amended that allegation to allege that the trespass is the "continuing failure and refusal to permanently remove their pollution [from the Plant Site] *before it trespasses upon* property of the City."  SAC ¶ 109.

24.    The City has also made analogous amendments to its continuing nuisance count. The City amended its allegations to state that the nuisance consists of the "continuing unpermitted . . . spread of Defendants' pollution . . . to and from property of the City of Brunswick," SAC ¶ 118, and of Defendants' "continuing failure and refusal to permanently remove their pollution *before it contaminated* property of the City," SAC ¶ 119 (emphasis added).

25.    The City now alleges that the way to *end* the alleged trespass and nuisance, in its view, is to take additional or different remediation steps at the Plant Site.  The City alleges that the claimed nuisance and trespass are abatable "by removing contamination from the land and marsh owned by Honeywell and controlled by Honeywell and Georgia Power *before their pollutants trespass upon property of the City of Brunswick*."  SAC ¶ 110 (emphasis added); *see also* SAC ¶ 123 (alleging that Defendants' nuisances are "continuing and abatable at least in part, by removing the contamination from the land and marsh owned by Honeywell and controlled by Honeywell and Georgia Power *before it threatens properties of the City of Brunswick*" (emphasis added)).

26.    The new allegations demonstrate that the City's claims are predicated on the alleged insufficiency of Honeywell's *current* remediation of pollution on the Plant Site *before* that pollution crosses the purported boundary separating the Superfund cleanup from the City's

8

property.  That work is being overseen by EPA pursuant to the Consent Decree.  Although the City offers the conclusory legal assertion that its lawsuit "does not challenge the actions of the U.S. E.P.A. or the orders entered relating to remediation of the Allied/LCP CERCLE [(sic)] Superfund Site," SAC ¶ 95, the actual legal claims in the Second Amended Complaint bely that assertion.

27.    For almost 30 years, Defendants have been investigating and remediating mercury and PCB contamination stemming from the Plant Site at the direction and under the oversight of a federal agency and pursuant to a federal statute.  Because the City's Second Amended Complaint seeks damages based on the allegedly incomplete cleanup of that site, it challenges the sufficiency of Defendants' and EPA's remedial efforts under CERCLA and thus should be heard in federal court.

## GROUNDS FOR REMOVAL

28.    A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  This action is removable based on two independent grounds.

29.    *First*, this action meets the elements of the federal officer removal statute, 28 U.S.C. § 1442, because the City's claims for continuing trespass and continuing nuisance are "for or relating to" Defendants' decades-long investigation and remediation of environmental contamination at and around the Plant Site under the direction and oversight of EPA.

30.    *Second*, this action is also removable because the City's state-law claims necessarily involve substantial and disputed federal questions over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, including because those claims constitute a challenge to a federally directed environmental cleanup under CERCLA and would require Honeywell to violate federal law and deviate from the terms of the federal consent decree governing that cleanup.

Accordingly, the City's claims are subject to removal as necessarily federal claims, under the artful-pleading and *Grable* doctrines.

31.     Although this Court considered and rejected these grounds for removal based on the City's Original Complaint, the City's Second Amended Complaint contains new allegations that support removal based on the same theories.  Honeywell has appealed this Court's prior remand decision to the Eleventh Circuit and maintains that removal was proper based on the Original Complaint.  If the Eleventh Circuit affirms and agrees with this Court that the original complaint was not removable, however, the Second Amended Complaint is removable under 28 U.S.C. § 1446(b)(3).  This Court denied removal under both the federal-officer and federal question jurisdiction theory on the ground that the City was not seeking to hold Honeywell liable for activities undertaken as part of the EPA-overseen remediation or for failure to adequately abate pollution as part of the EPA-overseen remediation.  But new and modified allegations in the Second Amended Complaint make clear that the City is seeking to do exactly that.  Accordingly, if "the case stated by the initial pleading [was] not removable," the Second Amended Complaint constitutes an "amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

## I.     This Action Is Removable Under the Federal Officer Removal Statute.

32.     The federal officer removal statute allows removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

33.     The federal officer removal statute is "liberally construed," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), and "defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute," *Leite v. Crane*, 749 F.3d 1117, 1122 (9th Cir. 2014); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No.

3:19-MD-2885, 2020 WL 365617, at *2 (N.D. Fla. Jan. 22, 2020) ("[U]nlike the general removal

statute . . . , which must be strictly construed in favor of remand . . . , the federal officer removal

statute is 'liberally construed' in favor of granting federal officers and agencies (and those acting

under federal officers and agencies) access to a federal forum in which to litigate the merits of

defenses arising from their official duties." (internal citations omitted)).

34.     The Supreme Court has therefore emphasized that the policy of providing the

protection of a federal forum to federal officers "should not be frustrated by a narrow, grudging

interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Florida

v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) ("This statute is an incident of federal supremacy

and is designed to provide federal officials with a federal forum in which to raise defenses arising

from their official duties.").

35.     "Not only must the words of § 1442 be construed broadly but a court also must

'credit [the d]efendants' theory of the case' when evaluating the relationship between the

defendants' actions and the federal officer." *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021)

(citation omitted); *see also Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999) ("[W]e credit the

[defendants]' theory of the case for purposes of [all] elements of our jurisdictional inquiry.").  At

this stage, a defendant's allegations "in support of removal" need only be "facially plausible," and

the defendant receives the "benefit of all reasonable inferences from the facts alleged." *Baker v.

Atl. Richfield Co.*, 962 F.3d 937, 941, 945 (7th Cir. 2020).

36.     To remove an action under the federal officer removal statute, 28 U.S.C. § 1442, a

defendant that is not itself a federal officer must demonstrate that it (1) "is a person within the

meaning of the statute who acted under a federal officer"; (2) "performed the actions for which it

is being sued under color of federal office"; and (3) has a "colorable federal defense." *Caver v.

*Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (internal citations omitted). Honeywell satisfies all three of these criteria here.

37.   *First*, Honeywell is a "person" within the meaning of the statute who "acted under" a federal officer.  Honeywell is a corporation, *see* SAC ¶ 3, which qualifies as a "person" within the meaning of 28 U.S.C. § 1442.  And Honeywell "acted under" federal officers by assisting a federal agency, EPA, in carrying out the agency's statutorily mandated duty to investigate and remediate environmental contamination at the Plant Site.  *Second*, the City's claims are "for or relating to" actions that Honeywell performed "under color of federal office" because the claims are, at minimum, "connect[ed] or associat[ed]" with Honeywell's performance of a decades-long EPA-led cleanup.  *Third*, Honeywell has a "colorable federal defense" that the City's state-law claims are preempted by CERCLA.

### A.   Honeywell "Acted Under" Federal Officers.

38.   *First*, Honeywell "acted under" federal officers because Honeywell acted to "*assist, or to help carry out*, the duties or tasks of the federal superior"—namely, EPA.  *Watson*, 551 U.S. at 152 (emphases in original).  Far from merely complying "with federal laws, rules, and regulations," Honeywell operated under EPA's "subjection, guidance, or control" in the remediation of the Plant Site and thus "lawfully assist[ed]" EPA in the performance of its "official duty" under federal law.  *Id.* at 151, 153.

39.   As described above, EPA exerted "subjection, guidance, or control" over Honeywell for several decades by directing and closely supervising Honeywell's investigation and cleanup activities.  *See Watson,* 551 U.S. at 151; *Caver,* 845 F.3d at 1143–44.  Ever since EPA issued its Unilateral Administrative Order to Honeywell and others, EPA has directed the cleanup of the Plant Site.  EPA ultimately decided on the remedial action to be implemented under CERCLA in 2015.  *See* **Ex. A**.  And in 2016, Defendants entered into a Consent Decree with EPA

pursuant to which Defendants agreed to implement the remedial action that EPA had selected—subject to EPA's oversight and control.  *See id.*  EPA's remedial plan involves various methods for removing and containing contamination within the Plant Site, with each step of remediation carefully tailored to the area in question.  For some parts of the Site, EPA has directed Honeywell to completely dredge and replace acres of marsh; for others, Honeywell must cap the contaminated sediment or implement other means of reducing contaminant exposure.  *See* **Ex. E** at 1.

40.     Moreover, by carrying out an investigation and remediation of environmental contamination at the Plant Site under EPA's supervision, Honeywell has performed a task that the federal government would otherwise have had to perform itself.   Critically, a private defendant crosses the threshold from mere compliance with federal to assistance in its implementation where, "at least arguably, [the entity] performed a job that . . . the Government itself would have had to perform."  *Watson,* 551 U.S. at 154.  The "at least arguably" standard is easily satisfied here.  Under authority delegated to the agency by the President, *see* 42 U.S.C. § 9615, EPA "compile[s] and annually revise[s] a prioritized list of contaminated sites for cleanup, commonly known as Superfund sites"—with the option under CERCLA either to "clean those sites itself" or to "compel responsible parties to perform the cleanup."  *Atl. Richfield*, 590 U.S. at 5 (citing 42 U.S.C. §§ 9604, 9605, 9615).  Accordingly, at the very first step in the cleanup of the Plant Site—when, in 1994, EPA ordered Honeywell and others "to remove the chemicals remaining at the Plant, to determine the extent of contamination at the Plant, and to begin the environmental remediation of the Plant and the Plant Site," *see* SAC ¶ 65—Honeywell took on a responsibility subject to EPA's control that the agency itself would have otherwise had to perform under federal law.

41.     Reflecting that CERCLA remediation work is work EPA otherwise would have had to perform itself, EPA retains authority to take over the remediation work at the Plant Site under

the terms of the Consent Decree between Honeywell and the federal government. *See* **Ex. A** at 27–28. The Consent Decree specifically contemplates that EPA might itself conduct additional remediation work, and it requires Honeywell and the other signatories to reimburse EPA for any "response actions to be conducted or financed by EPA" at the Site. Ex. A at 17.

42. When Honeywell commenced a remedial investigation and feasibility study under EPA's direct oversight and subject to EPA's approval, it again took on a role that EPA "otherwise would have had to perform." *Caver*, 845 F.3d at 1143. At that step in the process, CERCLA provides that "EPA conducts (or orders a private party to conduct) a remedial investigation and feasibility study to assess the contamination and evaluate cleanup options." *Atl. Richfield*, 590 U.S. at 7.

43. Thus, had Honeywell not performed the EPA-supervised remediation, those tasks at minimum "at least arguably" would fall to the federal government under CERCLA. For purposes of the federal officer removal statute, Honeywell thus crossed the threshold outlined by the Supreme Court from "simply complying" with "federal laws, rules, and regulations" to acting under a federal officer. *Watson*, 551 U.S. at 152–54 (emphasis omitted). Removal here is thus not premised on Honeywell's mere participation in a "highly regulated industr[y]" or compliance with a "regulatory order." *Id.* at 152–53. Instead, removal is warranted because, if Honeywell or other potentially responsible parties had not carried out the investigation and remediation of environmental contamination at the Plant Site under EPA's direction, the federal government would have had to perform those tasks itself.

44. When Defendants removed the City's Original Complaint, this Court rejected Defendants' argument under the federal officer removal statute based only on the "acting under" prong. *See City of Brunswick v. Honeywell Int'l, Inc.*, No. 22-cv-132, 2023 WL 5671290, at *3–

4 (S.D. Ga. Sep. 1, 2023).  The Court concluded that "the EPA supervising Defendants' activities is not sufficient to demonstrate they acted under a federal officer" and distinguished contrary caselaw because "the City is not alleging the implementation of the remediation efforts violated Georgia law or caused the pollution."  *Id.* at *3.  It further reasoned that "the City argues Defendants released pollutants even before the EPA was involved, and the Complaint does not allege the pollution was done under the direction and control of the EPA."  *Id.*

45.    New allegations in the City's Second Amended Complaint directly contradict these key findings underpinning the Court's prior remand decision.

46.    First, although this Court concluded that "the City is not alleging the implementation of the remediation efforts violated Georgia law or caused the pollution," *id.*, the Second Amended Complaint clearly alleges the continuing nuisance and trespass are caused by the implementation of the remediation.  The City has clarified its prior allegation that Defendants committed a trespass by their "continuing failure and refusal to permanently remove their pollution from property of the City of Brunswick," Original Compl. ¶ 111; the City now alleges that the trespass is the "continuing failure and refusal to permanently remove their pollution [from the Plant Site] before it trespasses upon property of the City of Brunswick."  SAC ¶ 109.  The City further alleges that these alleged trespasses are "abatable . . . by *removing contamination* from the land and marsh owned by Honeywell and controlled by Honeywell . . . *before* [its] pollutants trespass upon property of the City of Brunswick."  SAC ¶ 110 (emphasis added).  Such removal, however, would fall within the heart of any EPA-authorized remedial action.

47.    Likewise, for continuing nuisance, the City now alleges that the nuisance arises because of Honeywell's "*continuing* failure and refusal to permanently remove [its] pollution *before* it contaminated property of the City of Brunswick," SAC ¶ 119 (emphasis added), and that

the nuisance is "continuing and abatable . . . by removing the contamination from the land and marsh owned by Honeywell and controlled by Honeywell . . . before it threatens properties of the City of Brunswick," SAC ¶ 123.

48.     Furthermore, the Second Amended Complaint makes clear that the alleged trespass and nuisance is happening *now*, as pollution at the Plant Site currently "*continues* to migrate both *to and from*" the City's property.  SAC ¶ 78 (emphasis added); *see also id.* ¶ 108 ("The continuing unpermitted presence and spread of Defendants' pollution at and about and to and from property of the City of Brunswick are continuing trespasses . . . ."); *id.* ¶ 118 ("The continuing unpermitted presence and spread of Defendants' pollution at and about and to and from property of the City of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.").

49.     The changes in the Second Amended Complaint render the complaint removable even under the analysis of the "acting under" prong this Court adopted in its initial remand decision.  *See City of Brunswick*, 2023 WL 5671290, at *3.  For example, this Court distinguished this case from the Tenth Circuit's decision in *Greene v. Citigroup, Inc.*, No. 99-1030, 2000 WL 647190, at *1–2 (10th Cir. May 19, 2000), on the understanding that the City did not claim that the remediation effort violated Georgia law.  In *Greene*, the plaintiff had filed suit in state court arguing that the defendant company's implementation of an EPA-ordered remediation of a radioactive waste site violated state law.  2000 WL 647190, at *1.  Affirming removal under the federal officer removal statute, the Tenth Circuit held, in relevant part, that the defendant had acted under the direction of a federal officer because it had "implemented a remedy selected by the EPA, a federal agency, pursuant to CERCLA, and . . . was subject to civil penalties for failure to comply with that directive."  *Id.* at *2.  The Second Amended Complaint makes clear that the City, too, is

alleging that "implementation of the remediation efforts violated Georgia law or caused the pollution," *City of Brunswick*, 2023 WL 5671290, at *3, because the City is alleging that Honeywell is liable under Georgia law for allegedly failing to abate pollution on a continuing basis "before" it moves from Honeywell's property to the City's, SAC ¶¶ 110, 119.  Such liability can only arise if a state court decides that the implementation of EPA's remedial plan for the Plant Site has been insufficient to prevent pollution from migrating to the City's property.

50.     Likewise, this Court distinguished *People of the State of California v. H & H Ship Service Company*, No. 94-10182, 1995 WL 619293 (9th Cir. Oct. 17, 1995), on a theory that the Second Amended Complaint now precludes.  There, the Ninth Circuit found that a corporate defendant "acted under" a federal officer when performing tasks "taken during the course of a removal action that was under the direction and control of the Coast Guard" pursuant to CERCLA. *Id.* at *2.  This Court previously distinguished that decision because the alleged release of pollutants occurred "before the EPA was involved, and the Complaint does not allege the pollution was done under the direction and control of the EPA."  *City of Brunswick*, 2023 WL 5671290 at *3.

51.     But the Second Amended Complaint makes clear that its claims do not arise from the *initial* release of pollutants (which would be barred by the four-year statute of limitations) but from an alleged *continuing* trespass and nuisance caused by the *current* spread of pollution from the Plant Site "to and from" the City's property, the consequence of what the complaint alleges is insufficient remediation.  *See SAC* ¶¶ 78, 108, 118.  That alleged spread, and the alleged failure to prevent it, is happening "under the direction and control of the EPA."  *City of Brunswick*, 2023 WL 5671290 at *3 *Id.*; *see, e.g.*, *City of St. Louis v. Velsicol Chem. Corp.*, 708 F. Supp. 2d 632, 637, 662 (E.D. Mich. 2010) (affirming federal officer removal where the plaintiff city alleged

chemicals from contaminated sites had "migrated and continue to migrate in the earth's subsurface, contaminating and imminently threatening to contaminate Plaintiff's wells and water supply" and, *inter alia*, the defendants had performed tasks in a CERCLA cleanup that "the government would otherwise be obligated to perform").

52.     It does not matter that the City attempts to disclaim any challenge to EPA's cleanup efforts.  *See* SAC ¶ 95.  The Court may not credit the City's conclusory legal assertion aimed at avoiding removal or preemption; that conclusory legal assertion does not change the fact that the actual allegations and legal theories asserted in the Second Amended Complaint do, in fact, require the state court to conclude that EPA's remedial efforts have been insufficient.  Courts credit a defendant's theory of removal over efforts at artful pleading to avoid removal.  *See, e.g.*, *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188 (1st Cir. 2024) (explaining that conclusory assertion that plaintiffs are not seeking to recover for official acts are irrelevant if "the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts").  Here, the Second Amended Complaint directly alleges that the City has violated Georgia law on a continuing basis because the EPA-ordered remediation process is failing to abate pollution on the Plant Site before it migrates onto the City's property.

**B.     The City's Claims Are "For or Relating to" Honeywell's Acts Under Color of Federal Office.**

53.     *Second*, the City's claims are "for or relating to" acts Honeywell performed "under color of [federal] office."  28 U.S.C. § 1442(a)(1).  To meet this prong, there need only be "a connection or association" between the act in question and the federal office.  *Caver*, 845 F.3d at 1144 (internal quotation marks omitted); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *In re Commonwealth's Mot. to Appoint Couns. Against or Directed to Def. Ass'n of*

*Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015) ("*Def. Ass'n of Philadelphia*").  The Removal Clarification Act of 2011 "broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais*, 951 F.3d at 292 (emphases in original).

54.     The Eleventh Circuit has explained that "[t]he hurdle erected by this requirement is quite low." *Caver*, 845 F.3d at 1144 (quoting *Isaacson*, 517 F.3d at 137).  It is not necessary "that the complained-of conduct *itself* was at the behest of a federal agency"; rather, it is "sufficient" if the City's "allegations are directed at the relationship between the [Defendant] and the federal government." *Baker*, 962 F.3d at 944–45; *accord Def. Ass'n of Philadelphia*, 790 F.3d at 470–71. Put another way, "[t]o show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137–38 (emphasis in original).

55.     In addition, "courts credit the defendant's theory of a case when determining whether a causal connection exists." *In re 3M*, 2020 WL 365617, at *4 (citations omitted).  As the Supreme Court explained, any other rule would "defeat the purpose of the removal statute" by "demanding an airtight case on the merits in order to show the required causal connection." *Acker*, 527 U.S. at 432.

56.     Honeywell satisfies this prong.   The Second Amended Complaint directly challenges the sufficiency of Honeywell's remediation of the Plant Site.  The alleged pollution that constitutes the alleged trespass and nuisance is, on Plaintiffs' theory, *currently* spreading from the Plant Site to the City because the ongoing remediation is insufficient.  *See* SAC ¶ 110 ("These continuing trespasses are abatable, at least in part by removing contamination from the land and marsh owned by Honeywell and controlled by Honeywell and Georgia Power before their

pollutants trespass upon property of the City of Brunswick."); ¶ 119 (challenging "Defendants' [alleged] continuing failure and refusal to permanently remove their pollution before it contaminated property of the City of Brunswick").

57.     These allegations are not incidental to the City's claims for continuing torts under Georgia law but are central to them.  For example, in order to successfully allege a continuing nuisance, the City must show that Honeywell has failed to abate the pollution and prevent the continuing pollution because, "[i]f a nuisance is not abatable, it is considered permanent" and "creates only one right of action, which accrues immediately upon the creation of the nuisance" with a four-year statute of limitations.  *Stroud v. Hall Cnty.*, 793 S.E.2d 104, 109 (Ga. Ct. App. 2016).

58.     The City's claims thus have more than the mere "connection or association" with Defendants' federally controlled actions that is necessary for removal under 28 U.S.C. § 1442.  *See Caver*, 845 F.3d at 1144.  The City's Second Amended Complaint expressly asserts that those cleanup activities are insufficient and that the insufficiency constitutes a failure to abate—that is, a continuation of—the trespass or nuisance.  And the challenged conduct is necessarily "occur[ing] *while* Defendants were performing their official duties."  *Isaacson*, 517 F.3d at 137–38.

### C.     Honeywell Has a Colorable Federal Defense.

59.     *Third*, Honeywell has a colorable federal defense:  The City's claims are preempted by Section 122(e)(6) of CERCLA, which as explained above prohibits Honeywell once the remedial investigation and feasibility study have begun from "undertak[ing] any remedial action at the facility [including a Superfund site] unless such remedial action has been authorized by the President."  42 U.S.C. § 9622(e)(6).

60.     "Courts have imposed few limitations on what qualifies as a colorable federal defense."  *Isaacson*, 517 F.3d at 138.  This element of the federal officer removal statute requires

only that a defendant "raise a claim that is defensive and based in federal law." *Id.* (internal quotation marks and citations omitted).  Further, a colorable federal defense need only be "plausible," *Carver*, 845 F.3d at 1145, meaning it cannot be "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous," *In re 3M*, 2020 WL 365617, at *5 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017)).  In other words, "a defendant's burden on this issue is relatively low." *Id.*  The defendant need not "virtually . . . win his case before he can have it removed," and removal is proper even if the federal defense is "ultimately reject[ed]." *Acker,* 527 U.S. at 431 (internal quotation marks omitted); *see also Mesa v. California*, 489 U.S. 121, 129 (1989) ("[T]he validity of the defense authorized to be made is a distinct subject . . . [and] has no connection whatever with the question of jurisdiction.").

61.     In this case, the City seeks damages from Honeywell based on Honeywell's alleged failure to do more than EPA required in the Consent Decree to remediate and remove pollution from the Plant Site and City property.  The City's claims are thus preempted because they "interfere with the implementation of a remedial action ordered by a federal agency (EPA), per federal law (CERCLA), approved by [a] federal court," *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 218 (N.D.N.Y. 2015), by requiring Honeywell to either comply with EPA's remedial plan and face liability under state law, or to deviate from EPA's remedial plan and violate federal law.  *See, e.g.*, *id.* at 217–18 ("It is impossible for [the defendant] to comply with the requirements of the Consent Decree without subjecting itself to liability under state statutory and common law . . . ."); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 551 (2d Cir. 2018) (holding that "subjecting Honeywell to potential state tort law liability" for failing to perform certain actions beyond what was required under a consent decree "would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives" under CERCLA).

"Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law," *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022) (quoting *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008)), and that is surely the case here.

## II. The City's Claims Necessarily Raise Substantial Federal Issues and Therefore Are Subject to Removal Under 28 U.S.C. §§ 1331 and 1441(a)

62.     Federal courts possess jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," and such cases may thus be removed from state to federal court.  28 U.S.C. § 1331; *see also id.* § 1441(a) (providing for the removal of civil cases within the "original jurisdiction" of federal courts).

63.     Courts generally determine "whether a claim arises under federal law" by evaluating "whether a federal question appears on the face of the plaintiff's well-pleaded complaint."  *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)).  However, it is well established that federal questions can arise "even where a claim finds its origins in state rather than federal law."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Even if no federal questions appear on the face of a plaintiff's complaint, removal will nonetheless be proper where the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

64.     The Supreme Court has "recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312.  The *Grable* doctrine "captures the commonsense notion that a federal

court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Accordingly, in evaluating whether a plaintiff's claims have "a sufficient federal character to support removal," the court must "seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). Applying these principles, "[c]ourts will not permit [a] plaintiff to use artful pleading to close off [a] defendant's right to a federal forum." *Id.*

65.     Courts applying the *Grable* test must ask "whether the plaintiffs' state-law tort claims 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) (quoting *Grable*, 545 U.S. at 314). Applied to the City's Second Amended Complaint, the *Grable* standard is satisfied because the City has directly challenged a CERCLA cleanup, and its claims—if successful—would necessarily interfere with the implementation of that cleanup under the requirements of a federal statute and a federal consent decree.

66.     Multiple courts, including the Eleventh Circuit, have held that state law claims which arise out of alleged pollution from CERCLA Superfund sites and which dispute the effectiveness of the remediation of such sites constitute a "challenge" to those remediation plans. *See, e.g.*, *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002) (a complaint constitutes a "challenge" to a remedial plan "if it interferes with the implementation of a CERCLA remedy"); *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1250 (10th Cir. 2006) ("The

State's argument that remediation in the South Valley is not working as the EPA and NMED claim constitutes a dispute over environmental cleanup methods and standards.").

67.     A federal court has "jurisdiction over state law claims that challenge a CERCLA cleanup because they implicate significant federal issues." *Coffey v. Freeport-McMoRan Copper & Gold Inc.*, 623 F. Supp. 2d 1257, 1271 (W.D. Okla. 2009), *aff'd*, 581 F.3d 1240 (10th Cir. 2009). Not only could such challenges impose liability on defendants for implementing remediation at a Superfund site that is entirely consistent with what was ordered by EPA and set forth in a federal consent decree, but also "[b]oth the government and parties participating in a CERCLA cleanup have a strong interest in ensuring that CERCLA's objectives are accomplished without 'time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.'" *Id.* (citation omitted).

68.     The Second Circuit's decision in *Bartlett v. Honeywell Int'l Inc.* illustrates this principle.  There, the plaintiffs argued based "on a state tort law theory" that Honeywell "should have departed from [a] consent decree's terms by conducting additional or different remedial action than that mandated by CERCLA and the consent decree."  737 F. App'x at 549.  In particular, the plaintiffs "challenge[d] the adequacy of the consent decree" enforcing the CERCLA remediation plan.  *Id.* at 550.  The Second Circuit held that the plaintiff's claims raised disputed and substantial federal issues, including "whether Honeywell has complied with a consent decree approved by a federal district court and the circumstances under which CERCLA might preempt the residents' state tort law claims."  *Id.* at 546.

69.     This Court previously rejected this ground for removal because it found that the City's Original Complaint did not "challenge the sufficiency or legality of Defendants' remedial efforts under CERCLA" or "seek injunctive relief that might conflict with the remedial efforts."

*City of Brunswick*, 2023 WL 5671290 at *5. Based on those findings, the Court then concluded that the City's "state law claims do not necessarily depend on the resolution of substantial questions regarding liabilities or obligations imposed by the EPA under CERCLA." *Id.* Accepting for present purposes that the Original Complaint did not "challenge the sufficiency or legality" of the remediation of the Plant Site, the same cannot be said for the City's Second Amended Complaint.

70.     New allegations in the Second Amended Complaint assert that Honeywell has committed a continuing trespass and nuisance by allegedly failing to abate pollution on an ongoing basis "*before*" the pollution leaves Honeywell's property and enters the City's property. SAC ¶¶ 109, 119. Put simply, the City alleges that Honeywell has failed to clean up the Plant Site sufficiently to prevent harm to the City. And it alleges that this failure has *continued* into the present. *See* SAC ¶ 78 ("[The contamination] continues to migrate both to and from City property."). But the cleanup of the Plant Site is exclusively governed by EPA pursuant to its authority under CERCLA and the terms of a federal consent decree. Honeywell is forbidden by federal law from going *further* in its cleanup efforts than what EPA has expressly allowed. 42 U.S.C. § 9622(e)(6). The claims in the Second Amended Complaint thus constitute a clear "challenge" to the federally directed cleanup and, as multiple courts have held, the Complaint thus necessarily raises substantial and disputed federal issues. *See Bartlett*, 737 F. App'x at 546; *Coffey*, 623 F. Supp. 2d at 1271–72 (holding that "a district court has jurisdiction over state law claims that challenge a CERCLA cleanup because they implicate significant federal issues" and finding that "pervasive . . . criticisms of [a] cleanup" constitute a "challenge[]" to the cleanup).

71.     Nor does it matter that the City does not seek injunctive relief to alter or expand EPA's selected remedy but instead seeks damages for Honeywell's alleged failure to go beyond

the remedy selected by EPA.  The distinction is immaterial for purposes of determining whether

the City's action challenges the CERCLA cleanup and thus raises substantial and disputed federal

issues.  *See, e.g.*, *Coffey*, 623 F. Supp. 2d at 1272 n.30 ("The plaintiffs seek damages for the

decrease in their property values, which essentially challenges the scope of the cleanup.").

72.     Moreover, the Second Amended Complaint seeks "exemplary damages from each

Defendant sufficient to punish each Defendant and to deter each Defendant from further like

wrongful conduct."  SAC, Prayer for Relief.  In light of the Second Amended Complaint's

allegations making clear that the alleged "wrongful conduct" is the failure to take additional

remediation measures that are not authorized and are in fact forbidden by federal law, this request

to impose financial penalties sufficient to "deter" Honeywell from following federal law

necessarily conflicts with the EPA-ordered remedial efforts.

73.     Consistent with *Grable*'s test, the federal issues outlined above are disputed

between the parties, and they are "substantial" because "a contrary holding that the district court

lacks jurisdiction could allow litigants to use the state courts as a vehicle to undermine a federal

court's ability to police its consent decrees."  *Bartlett*, 737 F. App'x at 546 (internal quotation

marks and citation omitted); *see also United States v. City of Loveland, Ohio*, 621 F.3d 465, 472

(6th Cir. 2010) (affirming the "substantiality of the federal interest" supporting removal in part

because "federal agencies negotiated the consent decree" at issue and "the consent decree was and

is intended to comply with a federal statute").

## COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

74.     Based on the foregoing, this Court has original jurisdiction of this action under 28

U.S.C. §§ 1331, 1441, and 1442(a).

75.    The United States District Court for the Southern District of Georgia is the appropriate venue for removal under 28 U.S.C. § 1441(a) because it is the federal judicial district encompassing the Superior Court of Glynn County, Georgia, where this suit was originally filed.

76.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders from the State Court Action are attached hereto as **Exhibit F**.

77.    Pursuant to 28 U.S.C. § 1446(d), Honeywell will promptly file a copy of this Notice of Removal, as well as a Notice of Filing of this Notice of Removal, with the clerk of the Superior Court of Glynn County, Georgia, and serve a copy of the same on the City.

78.    Honeywell reserves all defenses and objections available under applicable law, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses or objections.

## CONCLUSION

For the foregoing reasons, Honeywell respectfully gives notice that this action is hereby removed from the Superior Court of Glynn County, Georgia, to the United States District Court for the Southern District of Georgia.


Dated:  November 13, 2024                          Respectfully submitted,

*/s/  Mark D. Johnson*
Mark D. Johnson
Georgia Bar No. 395041
mjohnson@ghsmlaw.com

*/s/  Amber M. Carter*
Amber M. Carter
Georgia Bar No. 631646
acarter@ghsmlaw.com

**GILBERT HARRELL SUMERFORD &
MARTIN, P.C.**
Post Office Box 190
Brunswick, Georgia 31521-0190
P: (912) 265-6700
F: (912) 264-0244

Jeffrey D. Talbert*
**ARNOLD & PORTER LLP**
250 W. 55th Street
New York, NY  10019
Telephone:  (207) 233-3463
Fax:  (212) 836-8689
jeff.talbert@arnoldporter.com

*\* Pro Hac Vice Forthcoming*

***Attorneys for Defendant
Honeywell International, Inc. f/k/a
Allied Chemical Corporation and as
AlliedSignal, Inc.***

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing DEFENDANT HONEYWELL INTERNATIONAL, INC.'S NOTICE OF REMOVAL with the Clerk of the Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants; I have also emailed the pleading upon all parties to this matter; and I have also deposited a true copy of the same in the United States Mail, proper postage prepaid as follows:

John C. Bell, Jr
Pamela S. James
THE BELL FIRM
PO Box 1547
Augusta, Georgia 30903-1547
(706) 722-2014
john@bellfirm.net
pam@bellfirm.net

Robert P. Killian
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, Georgia 31520
(912) 263-9520
bob@killianlawfirm.com

Brian Donald Corry
McQUIGG SMITH & CORRY
504 Beachview Drive
Suite 3D
Saint Simons Island, Georgia 31522
(912) 638-1174
brian@msclawga.com

***Attorneys for Plaintiff***

Respectfully submitted this 13th day of November, 2024.

/s/  Mark D. Johnson

Mark D. Johnson
**GILBERT HARRELL SUMERFORD &
MARTIN, P.C.**
Post Office Box 190
Brunswick, Georgia 31521-0190
P: (912) 265-6700
F: (912) 264-0244
mjohnson@ghsmlaw.com

*Attorney for Honeywell International, Inc.
f/k/a Allied Chemical Corporation and as
AlliedSignal, Inc.*